IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COLLEEN C., o/b/o DANIEL I., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 18 C 1838 ) |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | ) Magistrate Judge Finnegan ) ) |
| Defendant. | ) ) |

## ORDER

Plaintiff Colleen C., on behalf of Daniel I., filed applications for Disability Insurance Benefits and Disabled Widow's Benefits under Title II of the Social Security Act, and for Supplemental Security Income under Title XVI of the Act. Only the Title XVI claim was successful. Plaintiff now seeks to overturn the portion of the final decision of the Commissioner of Social Security ("Commissioner") denying her request for benefits under Title II. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing memorandum in support of affirming the decision. After careful review of the record, the Court agrees with the Commissioner that there are no errors supporting reversal or remand of this case.

---

[1] Commissioner Saul is substituted for his predecessor, Nancy A. Berryhill, pursuant to FED. R. CIV. P. 25(d).

**BACKGROUND**

In December 2013, Plaintiff applied for disability insurance benefits, disabled widow's benefits, and supplemental security income, alleging in all three applications that she became disabled nearly 13 years earlier on January 1, 2001 due to metal rods in her face and neck. (R. 333, 340, 346, 396, 409). Born in 1961, Plaintiff was 39 years old on the alleged disability onset date and 52 years old at the time of the applications. (R. 396). She completed three years of college and spent approximately 9 years working as a real estate agent until December 2000. Thereafter she briefly worked as an interior designer (from July to September 2007 and from June to July 2011). Plaintiff has not held any additional jobs since July 2011.

The Social Security Administration denied Plaintiff's applications initially on April 18, 2014, and again upon reconsideration on April 2, 2015. (R. 148-235). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Kimberly S. Cromer (the "ALJ") on April 25, 2017. (R. 106). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Thomas Gusloff (the "VE"). (R. 108-44). In a decision dated June 21, 2017, the ALJ first explained that Plaintiff needed to establish disability no later than December 31, 2005 to recover disability insurance benefits (the date last insured or "DLI"), and no later than January 31, 2005 to recover disabled widow's benefits. (R. 18). The ALJ then found that prior to December 20, 2013, the record contained "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." She thus denied Plaintiff's claims for benefits under Title II of the Act. (R. 18-20).

Beginning December 20, 2013, however, medical records showed that Plaintiff suffered from several severe impairments, including migraines, history of temporomandibular joint ("TMJ") with 20+ surgeries by history and TMJ replacement, cervical degenerative disc disease and facet arthropathy with fusion of C5-C7 in 2008, arthritis of the right hand, anxiety, and chronic pain. (R. 20-21). Though these impairments did not alone or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, they resulted in an extremely limited residual functional capacity ("RFC"). (R. 21-23). The ALJ accepted the VE's testimony that a person with Plaintiff's background and RFC would not be able to perform any jobs available in the national economy, and awarded her supplemental security income benefits under Title XVI of the Act from December 20, 2013 through the date of the decision. (R. 23-24).

Plaintiff asked the Appeals Council to review the portion of the ALJ's decision denying her benefits between January 1, 2001 and December 20, 2013. In support of that appeal, Plaintiff submitted some additional medical documents that had not been considered by the ALJ. This included records from: Northwestern Memorial Hospital dated October 31, 2002 through January 13, 2003; Robert D. Schwartz, DMD, dated April 11, 2003; Oak Park Pain Center dated April 23, 2015 through April 17, 2017; and All Doctors dated May 24, 2017.[2] (R. 2). Of these, only the notes from Northwestern and Dr. Schwartz pre-date the December 20, 2013 disability onset date found by the ALJ. The Appeals Council denied the request for review, and Plaintiff now seeks reversal or

---

[2] The Appeals Council mistakenly stated that the record from Dr. Schwartz was dated April 11, 2013 but this is clearly a scrivener's error. (*See* R. 75).

3

remand of that decision, arguing that the Appeals Council failed to properly consider her new evidence, resulting in legal error.

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g). The Court will "reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In making this determination, the Court considers "the entire administrative record but do[es] not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (internal quotations omitted). When the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

### B. Appeals Council Decision

This court's ability to review the Appeals Council's decision "is dependent on the grounds on which the Council declined to grant plenary review." *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015). If the Appeals Council reviewed the evidence and determined it was, "for whatever reason, not new and material, and therefore deemed the evidence 'non-qualifying under the regulation,'" this Court retains jurisdiction to review that conclusion for legal error. *Id.* If, on the other hand, the Appeals Council reviewed the evidence and deemed it new and material but nevertheless concluded that "the record – as supplemented – does not demonstrate that the ALJ's decision was contrary to the

4

weight of the evidence – the Council's decision not to engage in plenary review is discretionary and unreviewable." *Id.* (internal quotations omitted).

In the denial notice, the Appeals Council listed Plaintiff's new evidence without any discussion of its contents and said it "does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence." (R. 2). This "minimal information . . . is insufficient to allow [this Court] to determine with any confidence that the Council accepted [the additional records] as new and material evidence." *Stepp*, 795 F.3d at 722-23, 725 (comparing *Perkins v. Chater*, 107 F.3d 1290 (7th Cir. 1997) (denying request for plenary review where the Appeals Council expressly evaluated the additional evidence submitted by the claimant) with *Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012) (granting plenary review based on ambiguity as to whether the Appeals Council found the new evidence immaterial or material but insufficient)). Indeed, the parties appear to be in agreement that the language in the denial notice should be interpreted to mean that the Appeals Council rejected Plaintiff's new evidence as non-qualifying. (Doc. 9, at 7; Doc. 16, at 5). The Court thus proceeds with the limited question of whether the Council's decision was erroneous.

Under the Social Security regulations, the Appeals Council will only consider additional evidence if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Stepp*, 795 F.3d at 725. Evidence is "material" if it "creates a reasonable probability that the Commissioner would have reached a different conclusion had the

5

evidence been considered." *Id.* (quotations omitted). A claimant must also show "good cause for not informing [the Social Security Administration] about or submitting the evidence" sooner. 20 C.F.R. § 404.970(b).

Plaintiff informed the ALJ before and during the April 25, 2017 administrative hearing that she was attempting to obtain medical evidence from prior to the December 31, 2005 date last insured. (R. 114, 524). At the end of the hearing, the ALJ agreed to hold the record open for 14 days. (R. 114). Thirteen days later, on May 8, 2017, Plaintiff requested a further extension of 30 days to produce records because she had not yet received them from the medical providers. (R. 533). Shortly thereafter, on June 9, 2017, Plaintiff submitted medical records spanning from October 2002 through May 24, 2017. (R. 535-41). The ALJ issued her decision on June 21, 2017 without considering the additional records, and declined Plaintiff's subsequent request to reopen the matter. (R. 15-25, 531).

On the record presented, the Court is satisfied that the additional medical records are "new" within the meaning of 20 C.F.R. § 404.970. *See, e.g., Potocki o/b/o Potocki v. Berryhill*, No. 16 C 7264, 2017 WL 3995816, at *7 (N.D. Ill. Sept. 11, 2017) (records that pre-dated the ALJ's hearing were not "available" and so "new" where the provider produced them in an untimely fashion despite the plaintiff's attorney's efforts in "actively and diligently" seeking them before the hearing). For similar reasons, Plaintiff also had good cause for failing to submit the records sooner, 20 C.F.R. § 404.970(b)(3), and the documents all relate to the period before the date of the ALJ's decision. Since the Commissioner does not dispute that Plaintiff has met these three requirements, the Court turns to the question of materiality.

6

In denying benefits under Title II, the ALJ stated that "the medical record does not include any objective signs establishing a medically determinable impairment prior to January 31, 2005 or December 31, 2005," the respective deadlines for establishing entitlement to disabled widow's benefits and disability insurance benefits. (R. 19). The new evidence submitted on June 9, 2017 undermines this assertion because it shows that Plaintiff was diagnosed with severe degenerative joint disease of the left temporomandibular joint at least as early as January 2003. Records from Plaintiff's oral surgeon, Dr. Robert Schwartz, show that Plaintiff underwent surgical procedures on October 31, 2002 and January 13, 2003 to first remove a failing temporomandibular prosthesis and then reconstruct a new one. (R. 79, 92). Between the two procedures, Plaintiff's mouth was wired shut. (R. 100). The ALJ ultimately concluded even without these records that Plaintiff's history of TMJ and "TMJ replacement" was a severe impairment as of December 20, 2013, (R. 20), and this new evidence supports a finding that the condition started prior to the date last insured. *See, e.g., Eichstadt v. Barnhart*, No. 06 C 2535, 2006 WL 8448113, at *1, 2 (N.D. Ill. Nov. 13, 2006) (finding the plaintiff's temporomandibular joint syndrome, "for which she had jaw surgery," to be a severe impairment).

The Commissioner argues that the new evidence still cannot be considered material because it is insufficient to demonstrate that Plaintiff was *disabled* prior to December 31, 2005. "It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity." *Nicevski v. Colvin*, 222 F. Supp. 3d 734, 737 (N.D. Ind. 2016). Here, the ALJ stated that "even if . . . the undersigned were to find that

7

subsequent objective findings, diagnoses, and medical treatment related back to [Plaintiff's] alleged onset date, the record still would not support a finding of disability" prior to December 31, 2005. (R. 19). There is ample support for this conclusion.

Despite Dr. Schwartz's concern that Plaintiff was experiencing chronic pain in April 2003, there are no records (new or otherwise) showing that she received additional treatment for TMJ, pain, or any other medical condition for nearly four years, until October 17, 2007. Nor is there evidence of any functional limitations that would restrict Plaintiff's ability to work prior to December 31, 2005. Absent such evidence, there is no merit to Plaintiff's speculation that her chronic jaw pain referenced in the 2003 letter "would likely cause similar if not the same limitations the ALJ imposed" as of December 20, 2013, more than 10 years later. (Doc. 17, at 3). Notably, Plaintiff was diagnosed with multiple additional impairments beginning in October 2007 (nearly two years after the DLI) that contributed to the ALJ's finding of disability in December 2013. (R. 20-21). In short, there is not a reasonable probability that Plaintiff's new evidence would change the outcome of the decision denying her disability benefits under Title II of the Act. It is thus not "material" and the Appeals Council did not err in failing to consider it. *Stepp*, 795 F.3d at 725.[3]

## **CONCLUSION**

For reasons stated above, Plaintiff's motion to reverse the ALJ's decision and remand the case for consideration of new evidence is denied, and the Commissioner's motion to affirm the decision is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

---

[3] There is no dispute that Plaintiff cannot recover SSI benefits prior to December 20, 2013. *Largent v. Colvin*, No. 14 C 50030, 2016 WL 47918, at *5 (N.D. Ill. Jan. 5, 2016) (citing 20 C.F.R. § 416.335) ("A claimant can only collect SSI benefits the month following the date of the application, regardless of how long she was disabled.").

ENTER:

Dated: August 23, 2019

_____
SHEILA FINNEGAN
United States Magistrate Judge